**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**OCTAVIOUS BURKS and JOSHUA
BASSETT, on behalf of themselves
and all others similarly situated**                                              **PLAINTIFFS**

**V.**                                              **CIVIL ACTION NO. 3:14-cv-745-HTW-LRA**

**SCOTT COUNTY, MISSISISPPI; THE
HONORABLE MARCUS D. GORDON,
in his official capacity; THE
HONORABLE BILL FREEMAN, in his
official capacity; THE HONORABLE
WILBUR MCCURDY, in his official
capacity; MARK DUNCAN, District
Attorney for the 8th Circuit Court
District, in his official capacity**                                              **DEFENDANT**

<u>**ORDER**</u>

Before this court are three motions to dismiss filed by the defendants *sub judice*,

who seek to put an end to the Title 42 U.S.C. § 1983[1] lawsuit instituted by plaintiffs

Octavious Burks and Joshua Bassett.  Defendant Scott County, Mississippi has filed a

motion to dismiss [docket no. 45], to which Judges Bill Freeman and Wilbur McCurdy

have joined [docket no.47].  Similarly, Judges Bill Freeman and Wilbur McCurdy filed

---

[1] Title 42 U.S.C. § 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

their own motion to dismiss [docket no. 48].  Judge Marcus D. Gordon, then, filed a motion for judgment on the pleadings [docket no. 53], in which District Attorney Mark Duncan [docket no. 55] and Judges Bill Freeman and Wilbur McCurdy have joined [docket no. 70].

These defendants champion a variety of legal theories upon which this court should dismiss the complaint of plaintiffs Octavious Burks, Joshua Bassett, and the putative classes they seek to represent.  These theories include immunity as provided by the Eleventh Amendment[2] to the United States Constitution; abstention under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); improper filing, since this case should have been filed as a Title 28 U.S.C. § 2241[3] habeas corpus petition; prohibition of the claims by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); and unripeness under the Prison Litigation Reform Act[4] because the plaintiffs have not exhausted their administrative remedies.

This court is persuaded that, at a minimum, the abstention standard articulated in *Younger v. Harris* obligates this court to dismiss the plaintiffs' requests for declaratory judgment.  This court, though, will retain and stay the plaintiffs' request for monetary damages against Scott County.  Additionally, because only Octavious Burks' and

---

[2] U.S. CONST. amend. XI states:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

[3] Title 28 U.S.C. § 2241(a) states:
> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.

[4] Title 42 U.S.C. § 1997e(a) states:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Joshua Bassett's damage claims remain, the motions to certify three classes [docket nos. 2 and 51] are dismissed as moot.  This court's reasoning is set out below.

## I.    BACKGROUND

The named plaintiffs *sub judice* are Octavious Burks ("Burks") and Joshua Bassett ("Bassett").  Burks and Bassett, on behalf of themselves and other similarly situated individuals, seek a declaratory judgment to put an end to Scott County's allegedly unconstitutional policies, which they claim violate the rights of pre-indictment detainees.

### A. Burks

Burks is a resident of Scott County, Mississippi ("Scott County").  On November 18, 2013, Burks was arrested in Scott County for attempted armed robbery, possession of a weapon by a felon, disorderly conduct, and possession of paraphernalia[5].  That same day, Burks appeared before Scott County Justice Court Judge Bill Freeman ("Judge Freeman") for an initial appearance.[6]  Burks, who was unrepresented at the

---

[5] The amended complaint does not specify the kind of paraphernalia.

[6] Rule 6.03 of the Mississippi Uniform Rules of  Circuit and County Court Practice explains the procedure of an initial appearance:

> Every person in custody shall be taken, without unnecessary delay and within 48 hours of arrest, before a judicial officer or other person authorized by statute for an initial appearance.
>
> Upon the defendant's initial appearance, the judicial officer or other person authorized by statute shall ascertain the defendant's true name and address, and amend the formal charge if necessary to reflect this information. The defendant shall be informed of the charges against him/her and provided with a copy of the complaint. If the arrest has been made without a warrant, the judicial officer shall determine whether there was probable cause for the arrest and note the probable cause determination for the record. If there was no probable cause for the warrantless arrest, the defendant shall be released. The judicial officer shall also advise the defendant of the following:
>
> 1. That the defendant is not required to speak and that any statements made may be used against him/her;

initial appearance before Judge Freeman, was remanded to the custody of the Scott County Detention Center.  Allegedly, on the recommendation of the arresting officer, Judge Freeman set Burks' bail at $30,000.00, without conducting an individualized hearing or considering bail factors, such as ability to afford bail and the appropriateness of nonmonetary bail options.  Burks says he could not afford the $30,000.00 bail, nor was he able to pay the percentage of bond required by the licensed bond agent.  Burks claims that Judge Freeman's order constituted a denial of bail.

Also on November 18, 2013, Burks completed an Affidavit of Indigence and Application of Appointment of Felony Indigent Counsel.  Under Miss. Code Ann. § 25-32-9(1)[7], upon completion of this affidavit, the felony defendant is entitled to appointment of counsel.

On December 19, 2013, Senior Circuit Court Judge Marcus Gordon ("Judge Gordon") approved Burks' application for counsel, but did not appoint counsel to represent Burks, saying he would only appoint counsel when Burks was indicted.

---

2. If the defendant is unrepresented, that the defendant has the right to assistance of an attorney, and that if the defendant is unable to afford an attorney, an attorney will be appointed to represent him/her;
3. That the defendant has the right to communicate with an attorney, family or friends, and that reasonable means will be provided to enable the defendant to do so;
4. Conditions under which the defendant may obtain release, if any;
5. That the defendant has the right to demand a preliminary hearing while the defendant remains in custody.

[7] Miss. Code Ann. § 25-32-9(1) states, in its pertinent part:
When any person shall be arrested and charged with a felony, a misdemeanor or an act of delinquency, then the arresting authority shall afford such person an opportunity to sign an affidavit stating that such person is an indigent and unable to employ counsel. Upon the signing of such affidavit by such person, the public defender shall represent said person unless the right to counsel be waived by such person.

Burks avers that this is not his first encounter with prolonged detention in Scott County.  Burks says from August 30, 2009 to February 18, 2011, he was held on suspicion of aggravated assault and disturbing the peace.  Burks says he was not indicted until December 2010, nearly sixteen months after his arrest.  A second time, Burks says he was held from June 18, 2012 to June 7, 2013 for possession of a firearm by a felon.  This time, Burks says he was released on his own recognizance without a hearing or indictment.

**B. Bassett**

Bassett, like Burks, is a resident of Scott County.  On January 3, 2014, Bassett was arrested pursuant to a warrant issued that same day for grand larceny and possession of methamphetamine.

On January 16, 2014, Bassett appeared before Judge Freeman for his initial appearance.  Like Burks, Bassett was not represented by counsel during his initial appearance.  Bassett was remanded to the custody of the Scott County Detention Center.  Judge Freeman, on the recommendation of the arrested officer, set bail at $100,000.00, without conducting any individualized hearing or considering bail factors, such as ability to pay or the appropriateness of nonmonetary bail options.  Bassett claims that he was not able to pay the $100,000.00 bond, nor was he able to pay a percentage of the bond as required by the licensed bond agent.

On April 30, 2014, another arrest warrant was issued for Bassett on the charge of burglary and two charges of petty larceny.

In March or April of 2014, Bassett completed an Affidavit of Indigence and Application for Appointment of Felony Indigent Counsel.  As explained above, according to Mississippi law, the filing of this affidavit entitles a felony defendant to representation.

Judge Gordon did not approve Bassett's application until May 21, 2014.  In addition, Judge Gordon did not immediately appoint counsel after approving the application, choosing to wait until Bassett was indicted to appoint counsel.

## C. Defendants

Judge Freeman and Judge Wilbur McCurdy ("Judge McCurdy") are Justice Court Judges for Scott County.  They are responsible for conducting initial appearances and preliminary hearings, as well as setting bail and conditions of release.  Plaintiffs claim that Judge Freeman and Judge McCurdy execute a Scott County custom, policy, and practice of arbitrarily setting bail amounts without individual bail hearings.

Scott County is one of four counties[8] located within the Eighth Circuit Court District of Mississippi.  Pursuant to Mississippi law[9], Scott County is tasked with paying the costs of providing a defense attorney to indigent defendants.  To comply with

---

[8] Scott County, Leake County, Neshoba County, and Newton County.

[9] MISS. CONST. Art., 14, § 261 states:  "The expenses of criminal prosecutions shall be borne by the county in which such prosecution shall be begun; and all fines and forfeitures shall be paid into the treasury of such county.  Defendants, in cases of conviction, may be taxed with the costs."

Miss. Code Ann. § 25-32-1 states, in its pertinent part:
> Should the board of supervisors of any county or the boards of supervisors of two (2) or more counties in the same circuit court district determine . . . that the county or counties have a sufficient number of indigent defendant cases to establish an office of public defender, the board of supervisors or boards of supervisors are authorized and empowered, in their discretion, to establish the office, provide office space, personnel and funding for the office, and to perform any and all functions necessary for the efficient operation of such an office to the end that adequate legal defense for indigent persons accused of crime shall be provided at every critical stage of their cases as an alternative to court appointed counsel.

Mississippi law, the Mississippi counties of Scott, Leake, Neshoba, and Newton have contracted with the Eighth Circuit Court District of Mississippi and four private attorneys to provide public defender services.

Plaintiffs claim that these contracts of employment[10] with the four private attorneys obligate Scott County to provide a public defender to represent indigent felony arrestees in preliminary hearings in the Justice and Municipal Courts.  Plaintiffs claim that they and the putative class members are the intended third-party beneficiaries of this contract.

Plaintiffs contend that Scott County, however, enforces a custom and policy of not providing counsel to indigent felony arrestees until they have been indicted.  Judge Gordon, a senior Circuit Court Judge for the Eight Circuit Court District of Mississippi who approves or disapproves applications for appointed counsel, say plaintiffs, has a policy of delaying the appointment of counsel to eligible, indigent arrestees until they have been indicted.  Judge Gordon may have confirmed as much, as he allegedly told the New York Times that he does this because "that public defender would go out and spend his time and money and cost the county money in investigating the matter. . . . And then sometimes, the defendant is not indicted by the grand jury.  So I wait until he's been indicted."  Campbell Roberson, *In a Mississippi Jail, Convictions and Counsel Appear Optional*, N.Y. Times, Sept. 25, 2014, at A15.  Judge Gordon also allegedly told the New York Times that "he did not have the jurisdiction to appoint a public defender at all until a defendant was indicted in his courtroom, even if someone were to request a preliminary hearing or a bail hearing.  In those cases, [Judge Gordon] said, a defendant 'can represent himself, or he can employ an attorney.'"  *Id.*

---

[10] The parties in this case have not provided this court with copies of these contracts.

This delay in the appointment of counsel, say plaintiffs, is exacerbated because Judge Gordon only impanels a Scott County Grand Jury three times a year and, even then, discharges the Grand Jury after no more than thirty days of service.  Resultedly, say plaintiffs, a detained felony arrestee must wait months to find out whether the Scott County Grand Jury has issued a true bill.  Moreover, the plaintiffs claim that the District Attorney's office does not review most felony cases until law enforcement has completed its investigation, and, moreover, the District Attorney does not monitor law enforcement investigations to ensure that delay is avoided.

The unconstitutional consequences of the above approach, argue plaintiffs, are the creation and nurturing of a juridical mechanism which requires Scott County indigent arrestees, who cannot afford bail or an attorney, to linger indefinitely in pre-indictment detention.  Even pre-indictment indigent arrestees who have qualified for appointment of counsel are caught up in this abyss, which leaves them without an attorney to protect their rights at preliminary hearings, when the court may address probable cause and review bail determinations.

**D.  Filing This Lawsuit**

Burks and Bassett filed this lawsuit on September 23, 2014, claiming that defendants violated their Sixth[11] and Fourteenth[12] Amendment rights (1) to counsel; (2)

---

[11] U.S. CONST. amend. VI states:
> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

[12] U.S. CONST. amend. XIV, § 1 states, in its pertinent part:
> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or

to a speedy trial; (3) to individualized bail determinations; and (4) to freedom from excessive pre-indictment detention.  Plaintiffs pursue these claims on behalf of themselves and three proposed classes of similarly situated individuals.

Two days after plaintiffs filed this lawsuit, on September 25, 2014, Scott County Sheriff Mike Lee ("Sheriff Lee") released plaintiff Bassett from the Scott County Detention Center, allegedly on the recommendation of defendant District Attorney Mark Duncan ("Duncan") that Bassett be released if Scott County authorities determined Bassett was not a flight risk or danger to the community.  Freed "on his own recognizance," that is, without a surety or property bond, Bassett claims that this decision to release him "on his own recognizance" demonstrates that Judge Freeman arbitrarily had set his bail at $100,000.00.  Had he received an individualized bail hearing to begin with, suggests Bassett, he would not have lingered in jail for so many months after his initial appearance.

On September 26, 2014, three days after filing this lawsuit, by an order from the United States District Court for the Southern District of Mississippi, Scott County delivered Burks into federal custody on a charge of violating Title 18 U.S.C. § 922(h)(1),[13] that is, being a felon in possession of a firearm.  Burks and his attorney claim they were unaware of the federal indictment prior to the United States District Court's issuance of the order.  Burks pleaded guilty to the federal charge on October 16,

---

property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws

[13] Title 18 U.S.C. § 922(h)(1) states:
It shall be unlawful for any individual, who to that individual's knowledge and while being employed for any person described in any paragraph of subsection (g) of this section, in the course of such employment . . . to receive, possess, or transport any firearm or ammunition in or affecting interstate or foreign commerce.

2014, and his sentencing was scheduled for January 26, 2015, at which time he was sentenced to fifty-one months in the custody of the United States Bureau of Prisons.  As a consequence, he is no longer a pre-indictment detainee in the Scott County Detention Center.

On December 4, 2014, the Scott County Grand Jury indicted Bassett on the methamphetamine charge.[14]  As of this court's motion hearing on March 27, 2015, a Scott County Grand Jury had not yet indicted Bassett on the larceny and burglary charges.  This court is not aware whether Burks has been indicted by the Scott County Grand Jury.

On December 12, 2014, plaintiffs filed an amended complaint.  Therein, Burks and Bassett sought to bring a class action suit under Title 42 U.S.C. § 1983[15] on behalf of themselves and other similarly situated individuals who have been, and will be, detained indefinitely without individualized bail hearings and who have been, and will be, detained indefinitely without the benefit of counsel.  Plaintiffs still claim violations of their Sixth and Fourteenth Amendment rights to due process, assistance of counsel, a speedy trial, and individualized bail hearings.

On behalf of themselves, Burks and Bassett allege four claims.  Count I alleges that Judge Gordon violated their Sixth and Fourteenth Amendment rights to assistance of counsel by failing to appoint meaningful and continuous counsel and by delaying appointment of counsel until indictment.

---

[14] On February 15, 2015, Bassett pled guilty to the methamphetamine charge, and he has been accepted into the Drug Court Program.

[15] *Supra* footnote 1.

Count II alleges that the plaintiffs have a liberty interest in appointment of counsel at the initial appearance, or immediately thereafter, to determine whether to seek a preliminary hearing prior to indictment.  Burks and Bassett say that Judge Gordon denied them this liberty interest, which is protected by the Due Process and Equal Protection Clauses of the Fourteenth Amendment, when he failed to appoint them counsel between their initial appearances and indictments.

Count III alleges that the defendants, by their collective policies, practices, and procedures, have created in Scott County a system of arbitrary, indefinite detention without counsel for unindicted and indigent felony arrestees, like themselves.  This system, claim Burks and Bassett, deprives them of their Sixth and Fourteenth Amendment rights to a speedy trial.

Count IV alleges that the plaintiffs have a liberty interest in being free from prosecution for felony accusations in the absence of a Grand Jury indictment.  Plaintiffs contend that the defendants' collective policies, customs, and practices arbitrarily deprived Burks and Bassett of their liberty interest in a Grand Jury indictment by creating a system of indefinite detention without counsel.  This system, say Burks and Bassett, violates their Fourteenth Amendment right to substantive due process and the right to be free of excessive and punitive detention prior to indictment.

As to the class action, Burks and Bassett propose the creation of three classes. Class 1 is to consist of felony arrestees in the Eighth Circuit Court District of Mississippi who have signed an affidavit of indigence and who have been, or will be, denied the assistance of counsel until indictment.  The common issue of fact for Class 1 is the nature of Judge Gordon's and the Eighth Circuit Court District of Mississippi's policies

with respect to appointing counsel for indigent arrestees awaiting indictment.  Common issues of law for Class 1 include whether the initial appearance in Mississippi is a critical stage, requiring representation of counsel; and whether the Sixth and/or Fourteenth Amendments guarantee an indefinitely detained, indigent arrestee the right to meaningful and continuous appointed counsel immediately following the initial appearance and prior to indictment.

Class 2 is to consist of felony arrestees in Scott County who have been, or will be, detained indefinitely prior to indictment. The common issues of fact for Class 2 include how many individuals accused of felonies are currently in jail in Scott County awaiting indictment; what are the Scott County Sheriff's Office's policies, practices, and procedures for investigating and handing over cases to the District Attorney for presentment to a Grand Jury; and what policies, practices, and procedures does the District Attorney's office follow with respect to monitoring the cases of individuals detained prior to indictment.  The common issues of law for Class 2 include whether the indefinite length of time that class members spend in jail prior to indictment violates their liberty interests in a speedy trial as protected by the Sixth and Fourteenth Amendments; whether the indefinite length of time that class members spend in jail violates their rights against excessive and punitive detention prior to indictment, guaranteed by the Fourteenth Amendment; and whether the Sixth Amendment right to speedy trial or the Fourteenth Amendment right against excessive and punitive detention prior to indictment place a limit on the amount of time the state may detain an individual without bringing formal charges by an indictment.

Class 3 is to consist of felony arrestees in Scott County with a right to bail under Mississippi law, but who have been, or will be, denied individualized bail hearings. The common issues of fact for Class 3 include the types of hearings Justice Court Judges provide to determine bail; what factors Justice Court Judges use to arrive at bail determinations; and how many felony arrestees eligible for bail are detained due to bail amounts they cannot afford.  The common issue of law for Class 3 is whether the putative class members, who are entitled to bail under Mississippi law, are entitled to an individualized bail determination under the Fourteenth Amendment.

As a remedy for these alleged constitutional violations, plaintiffs ask this court to issue a declaratory judgment announcing that defendants' policies are, indeed, violative of the United States Constitution.  Additionally, Burks and Bassett ask this court to award them monetary damages against Scott County for the time they spent wrongfully detained at the Scott County jail.

## II.    JURISDICTION

This court has subject-matter jurisdiction over this lawsuit pursuant to Title 28 U.S.C. § 1331[16], commonly referred to as federal question jurisdiction.  "To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First Nat'l Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936).  The plaintiffs' assert denial of various rights guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, including:  the right to counsel; the right to a speedy trial; a right to individualized bail determinations; and freedom from

---

[16] Title 28 U.S.C. § 1331 states:  "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

excessive pre-indictment detention. As the plaintiffs rely upon federal law, this court has subject-matter jurisdiction to hear those claims. *Id.*

### III.   STANDARDS OF REVIEW

Before the court are three motions by which defendants hope to dispose of this lawsuit: (1) a motion to dismiss[17] filed by Scott County [docket no. 45]; (2) a Rule 12(b)(6)[18] motion to dismiss filed by Judge Freeman and Judge McCurdy [docket no. 47]; and a Rule 12(c)[19] motion for judgment on the pleadings filed by Judge Gordon [docket no. 53]. District Attorney Duncan joined [docket no. 55] in Judge Gordon's motion for judgment on the pleadings. Similarly, Judge Freeman and Judge McCurdy joined in Scott County's motion to dismiss.

The standard for addressing a Rule 12(c) motion for judgment on the pleadings, is the same as that used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6). *In re Great Lakes Dredge & Dock Co.,* 624 F.3d 201, 209-10 (5th Cir.2010).

To survive a motion to dismissed waged under Rule 12(b)(6), the plaintiffs' complaint must articulate the grounds for entitlement to relief—including factual allegations that, when assumed to be true, "raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (*quoting Bell Atl. Corp. v.*

---

[17] Although styled as a "motion to dismiss," Scott County actually requests relief under Rule 12(c) of the Federal Rules of Civil Procedure, that is, "judgment on the pleadings."

[18] Rule 12(b)(6) of the Federal Rules of Civil Procedure states:
"Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: . . . failure to state a claim upon which relief can be granted."

[19] Rule 12(c) of the Federal Rules of Civil Procedure states: "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."

*Twombly*, 550 U.S. 544, 553-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  The complaint must allege "sufficient factual matter . . . to state a claim that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 556.  A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," which "do not permit the court to infer more than the mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

## IV.     YOUNGER V. HARRIS AND ABSTENTION

As stated earlier, the defendants have articulated numerous alternative arguments supporting dismissal of this lawsuit.  Rather than address each argument in turn, this court is persuaded that at least one argument, for abstention in accordance with *Younger v. Harris*, 401 U.S. 37, hits its mark and obligates this court to grant dismissal on all of the plaintiffs' claims, save the claim for monetary damages against Scott County.

All of the defendants have asserted in their respective briefs that this court should abstain in accordance with the United States Supreme Court's ruling in *Younger v. Harris*, 401 U.S. 37.  In *Younger*, John Harris ("Harris") filed suit in the United States District Court for the Central District of California against Evelle Younger ("Younger"), a California state prosecutor who had indicted Harris for violation of the California Criminal Syndicalism Act because Harris had distributed "leaflets advocating change in industrial ownership through political action."  *Id.* at 38-39, 60.

The complaint argued that Younger's attempt to prosecute Harris under the California Criminal Syndicalism Act violated Harris' rights of freedom of speech and freedom of the press, guaranteed by the First Amendment[20] to the United States Constitution.  *Id.* at 39-40.  In a three-judge panel, convened pursuant to Title 28 U.S.C. § 2284[21], the United States District Court agreed with Harris that the California Criminal Syndicalism Act violated the United States Constitution.  *Id.* at 40.

Invoking Title 28 U.S.C. § 1253[22], Younger directly appealed to the United States Supreme Court.  *Id.*  The Supreme Court, although noting the questionable constitutionality of California Criminal Syndicalism Act following the ruling in *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (finding Ohio's Criminal Syndicalism Act in violation of the Constitution), reversed the United States District Court's determination:

> [T]he judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances.

*Id.* at 41.

---

[20] U.S. CONST. amend. I states, in its pertinent part:  "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ."

[21] Title 28 U.S.C. § 2284(a) states:
    A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body.

[22] Title 28 U.S.C. § 1253 states:
    Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges.

Acknowledging a "longstanding public policy against federal court interference with state court proceedings" and the notions of "comity" and "federalism," the Supreme Court formulated a type of federal court abstention that now is known as "*Younger* abstention." *Id.* at 43-45.

The test for determining whether to apply *Younger* abstention is three-pronged. First, the court must determine whether a state proceeding is ongoing with which a federal proceeding might interfere. *Bice v. La. Public Defender Bd.*, 677 F.3d 712, 716 (5th Cir. 2012). Then, the court must determine whether the state has an important interest in regulating the subject matter of the claim. *Id.* Finally, the federal court must ascertain whether adequate opportunities exist in the state court proceedings to raise the constitutional challenges. *Id.* If the federal court answers in the affirmative to each prong of the test, then the federal court must abstain. *See La. Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1489-91 (5th Cir. 1995).

## A. Ongoing Proceeding

Defendants argue that Burks and Bassett, as well as the other purported members of the three classes, have ongoing proceedings in state court. This circumstance, say defendants, weighs in favor of abstention. Plaintiffs, though, contend that no proceedings are pending in state court because Burks and Bassett, at the filing of this lawsuit, along with the putative class members, were waiting in jail for Scott County to send their cases to a Grand Jury. In other words, plaintiffs argue that their cases are not pending but, rather, indefinitely stalled. Thus, say the plaintiffs, a determination in this court would not interfere with the state court prosecution.

In *Rickhoff v. Willing*, 457 Fed.Appx 355, 359 (5th Cir. 2012), "[t]he relevant inquiry in determining that the state judicial proceeding was 'ongoing' is whether the state proceeding was *pending* at the time the federal action was instituted." (emphasis added). The United States Supreme Court has acknowledged that upon indictment the state court proceeding is ongoing. *See, e.g., Younger,* 401 U.S. at 38. The Supreme Court, though, has not opined on whether a proceeding may be "ongoing" or "pending" prior to indictment.

Some courts have concluded that prosecution is ongoing at the time of arrest. *See, e.g., Eve Productions, Inc. v. Shannon*, 439 F.2d 1073, 1073-74 (8th Cir. 1971) (refusing to intervene following an arrest, but before indictment, because such would interfere with an ongoing state prosecution). Other courts, such as the United States District Court for the Western District of Louisiana, have rejected the suggestion that proceedings become ongoing or pending at the time of arrest. *Langley v. Ryder*, 602 F.Supp. 335, 339 (W.D. La. 1985) (finding that the arrest did not commence state criminal proceedings because no proceedings of substance on the merits had occurred).

The question before this court, then, is whether proceedings had commenced prior to indictment, but after a judicial probable cause determination. The parties *sub judice* have suggested that the law governing the attachment of counsel might assist this court. In *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 202-03, 128 S.Ct. 2578, 171 L.Ed.2d 366 (2008), addressing when the right to counsel attaches, the United States Supreme Court explained that "adversary judicial proceedings" begin when the

18

criminal defendant is brought before a judicial officer, informed of the charges against him, and the judicial officer imposes restrictions on the criminal defendant's liberty.  *Id.*

Similarly, Mississippi law states that prosecution is commenced "by the issuance of a warrant, or by binding over or recognizing the offender to compel his appearance to answer the offense, as well as by indictment or affidavit."  Miss. Code Ann. § 99-1-7. The Mississippi Supreme Court has announced that "one 'bound over' to await the action of the next grand jury" has reached the accusatory or adversarial point at which prosecution is considered to be "commenced."  *Howell v. State*, 163 So.3d 240, (Miss. 2014).

Burks, Bassett, and the purported classes they represent had received their initial appearances and then were placed in jail with large bails, all without the appointment of counsel.[23]  Under Mississippi law, during the initial appearance, a judicial officer informs the criminal defendant of the charges against him and, if the arrest was made without a warrant, makes a determination of whether probable cause existed for the arrest.  Miss. R. Unif. Cir. & Cnty. Ct. 6.03[24].  Accordingly, this court is persuaded that the prosecution

---

[23] As described earlier in the background section, events subsequent to filing this lawsuit may have rendered the named plaintiffs' claims moot; namely, Burks is in federal custody and Bassett has been released without bail and indicted on some of the charges.  Ordinarily, the named respondents of a class action would have to show they are still in custody awaiting trial at the time a United States District Court certifies the class.  *Gerstein v. Pugh*, 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).  In *Gerstein*, though, the United States Supreme Court opined that "[p]retrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted."  Moreover, the Supreme Court was persuaded that pretrial detention fell within the "capable of repetition, yet evading review" exception to mootness, which permits a court to review a complaint regarding a controversy that may no longer be live, but is capable of occurring again.  *Id.*  Therefore, the Supreme Court determined that even if pretrial detention had ceased for the named defendants, detention was capable of occurring again and, due to the class action nature of the lawsuit, "the constant existence of a class of persons suffering the deprivation is certain."  *Id.*

[24] *Supra* footnote 6.

*sub judice* "commenced," and thereafter was pending or ongoing, at the initial appearance.

The *Younger* abstention test, though, does not ask merely whether a state court proceeding is ongoing, but whether a parallel federal proceeding might interfere with that ongoing state court proceeding. *Bice*, 677 F.3d at 717. The United States Court of Appeals for the Fifth Circuit does not require interference to be "direct" to offend *Younger*. *Id.* If granting the requested relief "would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly," then the interference element of the test is satisfied. *Id.* Courts are directed to "be practical in assessing the most likely result of granting plaintiff's requested relief" and to look at the practical effect of granting the requested relief. *Id.*

The case *sub judice* is similar to *Luckey v. Miller*, 976 F.2d 673 (11th Cir. 1992). In *Luckey*, plaintiffs filed a class action lawsuit on behalf of individuals "adversely affected by the unconstitutional practices of the indigent defense system within Georgia." *Id.* at 676. Plaintiffs complained that the State of Georgia's indigent defense system was woefully inadequate and requested a declaratory judgment from the United States District Court requiring Georgia, inter alia, to furnish counsel during probable cause determinations and critical stages. *Id.* Plaintiffs argued that such a declaration would not offend *Younger* because they sought to address systemic issues, not "to contest any criminal conviction, nor to restrain any criminal prosecution." *Id.* at 677. The United States Court of Appeals Eleventh Circuit found this argument unpersuasive, stating "a decree of the sort requested by the plaintiffs would, inevitably, interfere with

20

every state criminal proceeding," because issuing such an order would restrain every indigent prosecution until these systemic improvements were in place.  *Id.*

Also similar is the case of *Pompey v. Broward Cnty.*, 95 F.3d 1543 (11th Cir. 1996).  In that case, the plaintiffs, who were indigent fathers with past-due child support obligations, filed a class action lawsuit complaining of unconstitutional procedures during "Daddy Roundups" and the cursory contempt hearings that followed.  *Id.* at 1544. According to the plaintiffs, the county would haul indigent parents into court on contempt charges for falling behind on child support payments.  *Id.* at 1545.  The plaintiffs also said that the court would not inform the parents of their right to court-appointed counsel and actively dissuade the parents from requesting court-appointed counsel.  *Id.* Moreover, plaintiffs complained that the court would spend only about five minutes on any given case and would fail to make inquiries into the parents' ability to pay child support before giving the parents' the choice of paying the full amount in arrears or going to jail.  *Id.*

The court, though, dismissed plaintiff's request for injunctive and declaratory relief on *Younger* abstention grounds.  *Id.* at 1549.  The court observed that the plaintiffs wanted a federal court to order the state court to inform every parent of his or her right to counsel, appoint counsel, and thoroughly inquire into a parent's ability to pay; that is, that a federal court would "force the state judges to follow what plaintiffs perceived to be the state's own laws and procedures."  *Id.*  The United States Court of Appeals for the Eleventh Circuit was particularly concerned with how it could frame "a useful injunction" without offending principals of comity and federalism.  *Id.*  Finding that such an injunction would be unwise, the federal court concluded that an injunction of the type

21

plaintiffs sought would be an insult to the state judges and a "potentially mischievous command to these officials to avoid committing any errors." *Id.* at 1549-50. Moreover, if a state judge failed to comply with the federal court injunction, an aggrieved parent could petition to the federal courts for a remedy, thus further entangling the federal courts in the activities of state courts. *Id.* at 1550. *Younger* abstention, perceived the United States Court of Appeals Eleventh Circuit, was created to avoid such conflict and entanglement. *Id.*

As the above cases suggest, if this court were to issue the declaratory judgment plaintiffs desire—that the defendants have violated the Sixth and Fourteenth Amendment rights of Burks, Basset, and the putative classes by (1) failing to appoint an attorney to qualifying indigent detainees; (2) denying speedy trials; (3) detaining plaintiffs for excessive periods before trial; and (4) failing to provide individualized bail hearings—this court necessarily would be interfering with the ongoing state court proceedings, usurping the state court's autonomy and replacing a state court judge's determination with our own. As the Supreme Court in *O'Shea v. Littleton*, 414 U.S. 488, 500, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), explained, an injunction of this type would result in "an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that Younger v. Harris, supra, and related cases sought to prevent." Accordingly, this court finds that the first prong of the *Younger* abstention test is satisfied.

## B. Important State Interests

This court now turns to the second prong of the *Younger* abstention test: whether the proceeding represents an important state interest. Parties do not dispute

that the State of Mississippi has an important state interest in prosecuting its own criminal laws. *See Milone v. Flowers*, 758 F.Supp.2d 362, 365 (S.D. Miss. 2010). Accordingly, this court is persuaded that the second prong of the *Younger* abstention test is satisfied.

## C. Adequate Opportunity in State Court

The third and final prong of the *Younger* abstention test requires this court to address whether the plaintiffs would have an adequate opportunity to raise their constitutional issues in the state court forum. As an initial matter, this is not a case of absolute pre-emption; state courts are as capable of addressing violations of the Sixth and Fourteenth Amendments as federal courts. *See, e.g., Paz v. City of Houston, Tex.*, 748 F.Supp. 480, 484 (S.D. Tex. 1990).

Plaintiffs have argued that their claims are of such a systematic nature that they cannot be addressed in any one detainee's criminal prosecution. Additionally, plaintiffs contend that the temporary nature of a pre-indictment detainee makes it difficult for them to challenge their detention in state court; that is, as soon as they are indicted, they lose their right to a preliminary hearing and a redetermination of bail. *See* Miss. R. Unif. Cir. & Cnty. Ct. 6.05 ("A defendant who has been indicted by a grand jury shall not be entitled to a preliminary hearing"). In support of their contention that state court remedies would be inadequate, plaintiffs point to the United States Supreme Court's decision in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

The plaintiffs in *Gerstein* were Florida prisoners, who were detained following arrest and were not permitted a probable cause hearing or arraignment until a month or more after arrest. *Id.* at 106. Pertinent to our case *sub judice* is footnote 9:

> The District Court correctly held that respondents' claim for relief was not barred by the equitable restrictions on federal intervention in state prosecutions, Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *The injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution.* The order to hold preliminary hearings could not prejudice the conduct of the trial on the merits.

*Id.* at 108 n. 9 (emphasis added).

The Supreme Court later clarified this footnote in *Juidice v. Vail*, 430 U.S. 327, 337, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), explaining that "[a]ppellees need be accorded only an *opportunity to fairly pursue their constitutional claims in the ongoing state proceedings*, and their failure to avail themselves of such opportunities does not mean that the state procedures were inadequate." Thus, it is not necessary that the constitutional claims be a "defense" to prosecution, only that the plaintiffs be able to raise the issues in the context of the state court proceeding.

This court is persuaded that the plaintiffs *sub judice* would be able to raise their complaints adequately in their respective state court proceedings. Firstly, unlike the plaintiffs in *Gerstein*, who had no contact with the court prior to an arraignment or preliminary hearing a month or more after their respective arrests, the plaintiffs here are entitled to an initial appearance, with a probable cause determination, within forty-eight hours of arrest. *See* Miss. R. Unif. Cir. & Cnty. Ct. 6.03.[25] At that point, during the initial appearance, plaintiffs could raise their concerns. S*ee, e.g., Pompey*, 95 F.3d at 1551 (observing that the plaintiffs could have raised their claims during their initial hearings and, if unsuccessful, could have appealed).

---

[25] *Supra* footnote 6.

Even after the initial hearing, plaintiffs could have petitioned the court for their requested relief.  For example, upon being approved for indigent counsel, plaintiffs could petition the court for appointment of counsel or appeal any denial thereof.  *See, e.g., Smith v. State*, 942 So.2d 308, 319-20 (Miss. 2006) (considering whether denial of counsel prior to a blood test violated the criminal defendant's rights).  Plaintiffs also could request individualized bail hearings and/or appeal a bail determination.  Rule 9(a) of the Miss. R. App. Proc.[26]  As to plaintiffs' complaints about lengthy pre-trial delay, Mississippi allows a criminal defendant to file a motion for dismissal of an indictment on due process grounds if the pre-indictment delay was intentional and prejudicial.  *Beal v. State* 118 So.3d 162, (Miss. Ct. App. 2010).  Additionally, the right to a speedy trial "attaches at the time of formal indictment or information or arrest—whichever occurs

---

[26] Rule 9(a) of the Mississippi Rules of Appellate Procedure states:

**Release Prior to a Judgment of Conviction.** A petition challenging an order refusing or imposing conditions of release shall be heard promptly by the Supreme Court or the Court of Appeals if the case has been assigned to the Court of Appeals. Upon entry of an order refusing or imposing conditions of release, the trial court shall state in writing the reasons for the action taken. Where the petition challenges an order denying bail or setting bail which the challenging party contends is excessive, the challenging party shall file contemporaneously with the petition such papers, affidavits, and portions of the record as will show:
    (1) the nature and circumstances of the offense charged;
    (2) the weight of the evidence;
    (3) family ties of the defendant;
    (4) defendant's employment status;
    (5) defendant's financial resources;
    (6) defendant's character and mental condition;
    (7) defendant's length of residence in the community;
    (8) defendant's record of prior convictions;
    (9) defendant's record of appearances or flight;
    (10) a copy of the trial court's order regarding bail;
    (11) where available, a transcript of the trial court proceedings regarding bail. If the party is unable to obtain such a transcript, the party shall state in an affidavit the reasons the party cannot obtain it;
    (12) such other matters as may be deemed pertinent.
An original and four (4) copies of the petition and accompanying documents shall be filed with the clerk of the Supreme Court. The Supreme Court or the Court of Appeals may require that additional copies be furnished.

first—and a delay of eight or more months is presumptively prejudicial." *Ben v. State*, 95 So.3d 1236, 1242 (Miss. 2012).

Despite the above remedies, plaintiffs complain that their right to a preliminary hearing, during which they wish to have counsel to challenge bail and probable cause determinations, is cut off once the Grand Jury hands down a true bill.  Plaintiffs, though, were not denied a preliminary hearing, only threatened that they would not receive appointed counsel during the preliminary hearing.  Assuming that the defendants would refuse to appoint counsel for a preliminary hearing, plaintiffs could still request preliminary hearings and, during the preliminary hearings, argue that their right to counsel had attached, entitling them to representation at all critical stages.  *See Rothgery*, 554 U.S. at 194-95 (the right to counsel attaches at the plaintiff's first appearance before a judicial officer, regardless of whether a public prosecutor is aware or involved).  Alternatively, the plaintiffs could have requested preliminary hearings or individualized bail hearings and proceeded in *pro se* capacities.

Given the above options, this court is not persuaded by the plaintiffs' argument that the state cannot provide adequate relief because the right to a preliminary hearing is cut off at the time of indictment.  As explained in *Duke v. State of Tex.*, 477 F.2d 244, 253 (5th Cir. 1973), "[a] party may not invoke the aid of a federal court, alleging that his state remedies are inadequate, without having first tested the sufficiency of those remedies and having found them to be wanting."

Accordingly, this court is persuaded that each of the three elements of *Younger* abstention is satisfied, and that abstention is proper.  This determination, however, does not settle this entire case.  *Younger* abstention applies only to requests for declaratory

and injunctive relief; it is not applicable to claims for monetary damages.  *Lewis v. Beddingfield*, 20 F.3d 123, 125 (5th Cir. 1994).  Because Burks and Bassett have demanded an award of damages against Scott County "for the time they [Burks and Bassett] spent wrongfully detained at the Scott County jail due directly to Scott County's failure to provide them with counsel and individualized bail hearings," *Younger* abstention does not apply.  Amended Complaint, docket no. 39.

Precedent in this jurisdiction, the United States Court of Appeals for the Fifth Circuit, directs this court to dismiss the requests for declaratory judgment in accordance with *Younger*.  This court, though, will retain and stay the request for damages against Scott County, permitting any remaining litigation in state court to proceed without this court's interference.  *Boyd v. Farrin*, 575 Fed.Appx. 517, 519 (5th Cir. 2014).  Upon conclusion of the state court proceedings, parties should notify this court as to the status of the state court proceedings and whether the plaintiffs intend to proceed.  *Id.*

## V.    CONCLUSION

As articulated above, this court is persuaded to grant the motions to dismiss filed by Judge Freeman and Judge McCurdy [docket no. 48] and Judge Gordon [docket no. 53], in which attorney Duncan has joined [docket no. 55], finding that *Younger* abstention requires this court to abstain in the interest of comity and federalism.

This court, though, will grant in part and deny in part Scott County's motion to dismiss [docket no. 45].  This court will grant Scott County's request to dismiss the plaintiffs' requests for injunctive and/or declaratory relief, as they merit *Younger* abstention.  This court, however, will retain Burks' and Bassett's demand for monetary damages against Scott County.  This remaining portion of this lawsuit will be stayed

pending the conclusion of state court proceedings.  The parties are directed to notify the court when such proceedings conclude, and plaintiffs are directed to inform the court whether they still intend to pursue their damages claim against Scott County.

Finally, because the only remaining claims are Burks' and Bassett's damages claim against Scott County, this court dismisses the motions to certify three classes [docket nos. 2 and 51] as moot.

**SO ORDERED** this 30th day of September, 2015

s/ HENRY T, WINGATE
UNITED STATES DISTRICT COURT JUDGE